IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JULIE LYN SIRCELY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| -vs- | ) | Civil Action No. 17-1358 |
| NANCY A. BERRYHILL,[1] COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Background

Plaintiff Julie Lyn Sircely ("Sircely") brings this action pursuant to 42 U.SC. § 405(g) for review of the ALJ's decision denying her claim for supplemental security income ("SSI") benefits.[2] She alleges a disability beginning on at least the date of the filing of her SSI application – December 17, 2013.[3] Following a hearing before an ALJ, during which time both Sircely and a vocational expert ("VE") testified, the ALJ denied her claim. (R. 11-36) Sircely appealed. Pending are Cross Motions for Summary Judgment. *See* ECF docket nos. [13] and [15].

### Legal Analysis

1. Standard of Review

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

[2] Sircely applied for disability insurance benefits as well but the ALJ denied that claim. Sircely represents that she does not appeal that denial. *See* ECF Docket No. 14, p. 1, n. 1.

[3] Sircely alleges disability beginning on April 9, 1998 but, in light of the ALJ's decision, now contends that "she has been disabled since at least the filing date of her SSI application and that she has been entitled to SSI benefits in connection therewith." *See* ECF Docket No. 14, p. 1, n.1.

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate. *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986). The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id. A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

   2.  The ALJ's Analysis

   At step one, the ALJ found that Sircely had engaged in substantial gainful activity through December 2001. (R. 13-14) Specifically, she determined that Sircely had reported earnings of $19,724.31 in 2000 and $18,320.59 in 2001. (R. 13) Because

those amounts exceeded the levels for substantial gainful activity in those years, she was, in effect, not disabled. (R. 13) Although Sircely did post earnings from the same employer in 2002, those earnings did not rise to the level of substantial gainful activity.

At step two, the ALJ determined that, as of May 17, 2017, Sircely had the following severe impairments: disorders of the back (discogenic and degenerative) and left hip pain. (R. 14) The ALJ reviewed medical records indicating that Sircely complained of anxiety and panic attacks beginning in 2007, the ALJ noted that "[n]o clinical indices of anxiety or panic [attacks] were documented…." (R. 14) As such, the ALJ found no severe mental impairments. (R. 14)

At step three, the ALJ concluded that Sircely does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1. The ALJ gave special consideration "to all of the claimant's musculoskeletal complaints in accordance with the revised musculoskeletal Listings." (R. 15) The ALJ also considered the combined effects of Sircely's obesity with her other impairments. (R. 15)

Prior to engaging in step four, the ALJ assessed Sircely's residual functional capacity ("RFC").[4] The ALJ found Sircely able to perform light work with certain limitations. (R. 15-35)

---

[4] "RFC" refers to the most a claimant can still do despite his / her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his / her limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Additionally, a person's RFC is an administrative finding reserved for the ALJ, not a medical opinion to be rendered by a doctor. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1546(c), 416.946(c).

At step four, the ALJ determined that Sircely is able to perform her past relevant work as a telemarketer. (R. 35) Such work is categorized as sedentary in exertional level and semi-skilled. As such, it is within Sircely's RFC. (R. 35)

The ALJ made an alternate finding at the fifth step of the analysis. Specifically, the ALJ concluded that, considering Sircely's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (R. 35-36) For example, Sircely would be able to perform the requirements of representative occupations such as a ticket seller, an order caller, and a photocopy operator. (R. 36) Consequently, the ALJ concluded that Sircely has not been under a disability, as defined in the Social Security Act, since the date of the alleged onset of disability. (R. 36)

### 3. Substantial Evidence Supports the ALJ's Decision

Sircely takes issue with the ALJ's decision based upon her contention that the ALJ's denial of benefits was based upon the "Plaintiff's alleged non-compliance with treatment and treatment recommendations." *See* ECF Docket No. 14, p. I find Sircely's argument to be unconvincing. Noncompliance is relevant to assessing credibility. *See Krykewycz v. Berryhill*, Civ. No. 17-821, 2018 WL 3062559, * 11 (D. Del. June 21, 2018) (stating that, "[p]ersistent attempts to obtain pain relief, increasing medications, trials of different types of treatment, referrals to specialists, or changing treatment sources may indicate that the symptoms are a source of distress and generally support a claimant's allegations. An applicant's claims, however, may be less credible if the level of frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show noncompliance with prescribed treatment.") *Bosko v. Berryhill*,

Civ. No. 17-277, 2018 WL 1508958, at *1, n.1 (W.D. Pa. March 27, 2018) (noting the same).

Here, the ALJ noted that, on numerous occasions, Sircely's allegations of pain and limitation were at odds with her noncompliance. (R. 14) (stating that "a]lthough provided with another psychiatric referral, the claimant was again noncompliant with following up on the referral."); (R. 15) (stating that, "[a]lthough prescribed physical and occupational therapies and instructed to follow up with an orthopedic specialist, there are no records in evidence to document that the claimant complied with those instructions."); (R. 17) (stating that, "[a]dditionally, even beginning in May 2007, medical evidence shows the claimant continued her pattern of seeking only intermittent treatment for her complaints. Medical records also documented persistent noncompliance with prescribed treatment and medical referrals."); (R. 18) (noting that, "[a]lthough discharged to outpatient orthopedic follow-up, there is no objective medical evidence in record that the claimant complied with that follow-up or that she sought or received any additional medical treatment prior to returning to the family doctor in September."); (R. 19) (stating that, "[w]hile providing her with another orthopedic referral, the family doctor specifically noted that the claimant had been provide[d] with two prior referral[s], but had failed to follow up and see the orthopedic specialist. The claimant, however, continued her pattern of noncompliance with the orthopedic referral."); (R. 19) (stating," [d]espite her allegations of pain, the claimant continued her pattern of seeking treatment only intermittently and failing to comply with prescribed treatment and referrals for specialized evaluation."); (R. 20) (stating that, "[r]ecords from the family doctor clearly documented the claimant's persistent noncompliance with the

6

orthopedic referrals. Her allegation of seeking treatment at a pain clinic but leaving due to an extended wait was uncorroborated by any objective medical evidence in the record. The claimant admitted her persistent noncompliance with physical therapy, initially reporting she was 'not interested' in that treatment, then revising her response, alleging it was difficult to leave her house due to pain."); (R. 21) (finding that, "[t]he claimant also failed to comply with prescribed physical therapy."); (R. 23) (observing that, "[d]espite her agreement to be 'totally compliant' with prescribed treatment in order to obtain further partial temporary disability, the claimant failed to do so."); (R. 24) (stating that, "[a]lthough instructed to start buddy tapping the finger and start physical therapy, there is no objective medical evidence in the record that the claimant complied with either medical instruction."); (R. 28) (referring to a May 2015 ER visit and noting, "[t]he claimant was noncompliant with seeking orthopedic follow-up."); (R. 33) (finding that, the "[m]edical evidence, as discussed, does not support the claimant's allegation of disability. Rather, medical evidence in [the] record shows a pervasive pattern of very infrequent treatment, as well as persistent noncompliance with prescribed treatment and medical referrals.")

Additionally, it is clear that noncompliance was only a part of the ALJ's assessment of Sircely's credibility. She also considered the frequency of her treatment, noting that the infrequency of her treatment was at odds with her allegations concerning the intensity, persistence and limiting effects of her impairments. (R. 33) *See also*, (R. 16) ("There is no objective medical evidence in the record that she sought or received any further medical treatment for any compliant until January, 2004, over five years later."); (R. 23) ("The claimant did not have any documented medical treatment after

January 2012 until January 2013, a year later. The lack of any documented medical treatment whatsoever for such an extended period appears most inconsistent with her allegations in testimony of constant, severe pain."); (R. 27) ("There is no objective evidence in [the] record that the claimant sought any further medical treatment for her back, hip, or other musculoskeletal complaints until mid-2015, almost 18 months later, another extended period without treatment that appears inconsistent with her subjective allegations of constant pain and related functional limitations."); (R. 28) ("Despite her complaints and allegations during the consultative exam for disability purposes, the claimant, as noted did not seek or receive any treatment until May 2015, almost a year later and over 18 months since her last documented medical treatment."); and (R. 33) ("Despite her allegation of having 'bad' arthritis and significant, constant pain, a longitudinal view of the medical evidence beginning in May 2007 shows the claimant only very intermittently sought medical treatment, often going six months and multiple times going a year or more between medical follow-ups.").

Further, even a cursory review of the ALJ's decision reveals that she devoted more than twenty (20) pages to reviewing Sircely's medical records and complaints. In fact, the ALJ gives an exhaustive discussion of, among other things: Sircely's April 1998 motor vehicle accident and follow up; complaints in 2004 of low back pain and treatment resulting therefrom; medical records and treatment beginning in May 2007 relating to musculoskeletal impairments; physical therapy records beginning in January of 2011; a Medical Assessment Form from September 2011 in which the family doctor limited Sircely to performing light / sedentary work only 20 hours per week due to involvement in physical therapy; January 2012 progress notes specifically noting that the temporary

disability had been done solely to allow for further treatment and that Sircely had been noncompliant; January of 2013 records relating to worsening of back pain; November of 2013 orthopedic records and a December of 2013 follow up with the orthopedic hip specialist and neurologist; the results of a June 2014 consultative exam; records from an emergency room visit in May of 2015; October 2015 treatments with a pain specialist; and Sircely's own testimony.  That review is supported by substantial evidence of record, as detailed in the ALJ's citations. Consequently, remand is not required.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIE LYN SIRCELY,                    )
           Plaintiff,          )
                        )
  -vs-                                )          Civil Action No. 17-1358
NANCY A. BERRYHILL,[5]               )
COMMISSIONER OF SOCIAL SECURITY,     )
                        )
        Defendant.             )

AMBROSE, Senior District Judge.

## ORDER OF COURT

      Therefore, this 5th day of November, 2018, it is hereby ORDERED that the

decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for

Summary Judgment (Docket No. 13) is DENIED and Defendant's Motion for Summary

Judgment (Docket No. 15) is GRANTED.

                                BY THE COURT:

                                /s/ Donetta W. Ambrose
                                Donetta W. Ambrose
                                United States Senior District Judge

---

[5] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.